# IN THE COURT OF APPEALS OF IOWA

No. 23-0938
Filed December 4, 2024

**KOHL MILTON FISHER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Boone County, John R. Flynn, Judge.

An applicant for postconviction relief appeals the denial of his claims. **AFFIRMED.**

Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Chicchelly, P.J., Buller, J., and Gamble, S.J.* Badding, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**GAMBLE, Senior Judge.**

Kohl Fisher appeals the denial of his application for postconviction relief. He asserts he is actually innocent of the offense to which he pled guilty—sexual abuse in the third degree—and his counsel provided ineffective assistance. Finding he did not prove either claim, we affirm the denial of his application.

## I.  Background Fact & Proceedings.

In March 2021, Fisher entered a written guilty plea to sexual abuse in the third degree as a habitual offender in violation of Iowa Code sections 709.1, 709.4(1)(b)(2), 903B.1, 902.9, and 902.9 (2020).  For a factual basis on the plea, he hand wrote, "I had sexual intercourse with H.J. 12 or 13 yrs of age."  He initialed next to a typed admission of previous felony convictions and a request for "the court to accept the minutes of testimony as true."  He also initialed each paragraph in the plea document outlining his rights and the consequences of the plea and sentence.  But during his presentence investigation, he told the officer he did not have sex with H.J. and had been wrongfully accused.  The court accepted his plea and sentenced him in May.  Three additional charges—a serious misdemeanor and two class "D" felonies with habitual offender sentence enhancements—arising from Fisher's flight from law enforcement related to his arrest for the sexual-abuse charge were dismissed under a plea agreement.

The facts of the underlying offense, as related in the minutes of testimony, are as follows.  On July 4, 2020, Fisher went boating with a group of people, including twelve-year-old H.J.  While boating, Fisher asked H.J. sexual questions.  After the boating trip was done, H.J. and a younger child were at Fisher's sister's house while the adults went to get food at a restaurant.  Fisher, who arrived with

his girlfriend at the restaurant before the others, was not feeling well and left before the other adults arrived, going to his sister's house to lay down in a bedroom. He called H.J. to come back and see him and asked her more sexual questions. He put his hand on her hip, began to kiss her, told her to take off her pants, and had intercourse with her. Afterward, H.J. went back to the living room where the other child had been sitting, and she was there when the other adults returned. H.J. reported what happened to her father two days later, and the investigation began. Both H.J. and the younger child present in the house were listed as witnesses for the State.

Several months after pleading guilty, in September 2021, Fisher filed an application for postconviction relief asserting ineffective assistance of trial counsel, Jesse Macro. Fisher later amended the application to assert actual innocence. He listed several specific grounds for his ineffective-assistance-of-counsel claim: failure to adequately advise of rights and consequences of entering a guilty plea; failure to ensure knowing and voluntary plea; failure to adequately investigate and prepare for trial, including failing to depose witnesses; and failure to file a notice of appeal.

First the court addressed Fisher's actual-innocence claim. The court found Fisher not credible "other than his willingness at trial to admit he was alone in his sister's bedroom with the victim and that he maintained his innocence up until he signed the guilty plea." The court noted Fisher's prior convictions, including for a crime of dishonesty, and it determined "Fisher utterly fails to meet by clear and convincing evidence the 'demanding actual-innocence standard.'" (Citation omitted.)

Then, the court considered each ineffective-assistance claim. The court ruled Macro's investigation was adequate under current caselaw and his decision to not depose the child was sound for strategic trial reasons and to preserve Fisher's plea options. Next, the court determined Fisher's initialing throughout his guilty plea supported Macro's testimony of advising Fisher of the plea's consequences. And the court found credible counsel's testimony "he advised Fisher not to plead guilty" and "Fisher admitted while signing the plea that he engaged in the sex act in question." Finally, the court observed that only "Fisher's uncorroborated and unreliable testimony" suggested he asked Macro to appeal, and it agreed with Macro that Fisher did not have good cause to appeal from his guilty plea. The court further held that not only did Fisher not prove by a preponderance of evidence that counsel failed in a duty, he did not carry his burden to prove prejudice, and the court denied Fisher's application.

## II. Analysis.

On appeal, Fisher reasserts his claims of actual innocence and ineffective assistance of counsel based on failure to investigate.

**A. Actual innocence.** To the extent Fisher's actual-innocence challenge raises constitutional questions, we review it de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019). We give weight to the district court's credibility findings. *See Babcock v. State*, No. 21-0697, 2022 WL 10827471, at *1 (Iowa Ct. App. Oct. 19, 2022). Our supreme court has "recognize[d] that actually innocent people plead guilty for many different reasons." *Schmidt v. State*, 909 N.W.2d 778, 787 (Iowa 2018). But, "[f]or an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that,

despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence."  *Id.* at 797.

Trial counsel Macro testified at Fisher's postconviction trial.  When asked if Fisher had said he did not commit the sexual abuse, Macro agreed he had said that in person and "over the phone many times prior to his arrest."  But, counsel further explained:

> Q. Did [Fisher] at any one time tell you he had committed the sexual abuse prior to signing the guilty plea?  A. Yes.
> Q. Can you explain when that was?  A. When he and I went over what we would need to do before the guilty plea was executed.
> Q. Was that on or around the time you—he signed the guilty plea?  A. Correct.
> Q. What did he say during that time that he did?  A. He said he would admit to doing it, that he admitted that he did it.
> Q. And he wrote that in the guilty plea?  A. Yes.  So I want to make sure it's clear again.
> Q. Yes?  A. He was very consistent.  Only after he was going to accept the plea was he articulating what he wrote down in the guilty plea.

Macro explained because Fisher previously maintained his innocence, he made sure to go over the plea "thoroughly" and required Fisher to initial every paragraph. Macro confessed doubts Fisher would go through with it, but after Fisher chose to plead and not go to trial, Macro's "job [wa]s then to facilitate what [Fisher] wants which was to get the guilty plea done and the plea deal done."  Macro clarified if Fisher had said he was lying when he wrote the factual basis and signed the plea, Macro "wouldn't have let him sign it."

Fisher presented testimony of his version of events from July 4, 2020. Fisher's former girlfriend testified Fisher dropped her off at the restaurant and went to lie down at his sister's house.  She testified she and the other adults were there

for "roughly twenty to thirty minutes," during which time they ordered, the food was made, they ate and then paid. Fisher's sister testified Fisher would have been alone with the two children at her home for "thirty minutes max," again during which she and the other four adults ordered food, ate, and paid their bill. She said the younger child called her "more than twice" by text and Facetime and she could see H.J. in the background. She also heard H.J. contact her mother's boyfriend during that period. Fisher's former girlfriend also testified the younger child Facetimed Fisher's sister "a few times, like back to back" and also called his father.

Fisher testified, agreeing when he pled guilty to the sexual abuse charge it was part of an agreement to dismiss several other charges. He said while boating, H.J. had interjected into a conversation among the adults about sex, and he had commented "So you're not a virgin no more" to "clarify" a statement she'd made about sexual interaction. Fisher said after he took his girlfriend to the restaurant, where they got a booth for the group and ordered food, he "started feeling ill" and left for his sister's house. When he arrived, H.J. and the younger child were playing on their phones in the living room. Fisher went to lie down and "hollered" for H.J. Both children came to the room, but Fisher "asked [the younger child] to give us a second because [he] had to state something to [H.J.] at that point." According to Fisher, they had a conversation about H.J.'s comments on the boat and "that if she's going to be doing that stuff, she needs to be careful because it can lead to life altering consequences such as pregnancy and other things." He stated he did not have sexual intercourse with H.J. or touch or kiss any of her "private parts." The younger child came back to the bedroom, and H.J. left the room with him.

Fisher said he was alone in the room with H.J. for "two minutes" and fell asleep after H.J. and the other child went back to the living room.

According to Fisher, the statement he wrote on his plea was a lie. He claimed he wrote the statement "I had sexual intercourse with H.J." because it was "the only way that the courts would accept that plea and enter it in." But, he said he did not have sexual intercourse with H.J. Fisher stated he agreed to plead guilty because there was little contact between him and Macro, no investigation work, and no avenue to defend himself, so his "best option was to take the plea deal for the lesser time." On further questioning, Fisher admitted personally writing the factual basis by hand, knowing it would be presented to the court as true and correct, and knowing the judge would believe it.

In addition to the testimony Fisher presented at the postconviction trial, we consider the minutes of testimony assuming the witnesses would have testified as described. Fisher's own testimony established he had earlier asked the twelve-year-old girl to clarify if she was a virgin. He later left the restaurant where all the adults were having dinner to go to his sister's home where the children were staying instead of his mother's house where he was living. He hollered for H.J. to come to his sister's bedroom, excused the younger child, talked about sex with her again, and had sufficient time alone with her behind closed doors to perpetrate a sex act. In light of all the evidence and considering the court's credibility determinations, Fisher has not shown by clear and convincing evidence that "no reasonable fact finder could convict" him of sexual abuse in the third degree. *See Schmidt*, 909 N.W.2d at 797. We affirm the district court's denial of Fisher's claim of actual innocence.

**B. Ineffective assistance of counsel.** We review ineffective-assistance-of-counsel claims de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). To establish his trial counsel provided ineffective assistance, Fisher must demonstrate "counsel failed to perform an essential duty that resulted in prejudice." *Id.* (cleaned up). "We presume counsel acted competently." *Id.* (citation omitted). To satisfy the essential duty prong, Fisher "must establish his counsel's performance fell below the standard demanded of a reasonably competent attorney." *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018). To satisfy the prejudice prong in the case of a guilty plea, Fisher "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Sothman*, 967 N.W.2d at 523 (cleaned up).

The only ineffective-assistance claim Fisher appeals is the failure to adequately investigate. "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001). "[T]he duty to investigate is not unlimited," and "the decision to investigate a particular matter must be judged in relationship to the particular underlying circumstances." *Id.*

Fisher asserts Macro failed to properly investigate his case and allowed him to plead guilty despite a consistent denial of guilt. Fisher claims cell phone records counsel could have, but did not, obtain "seem to considerably narrow the window during which the alleged sexual assault could have occurred." At trial, Macro had no recollection of having that information before Fisher's plea. Most of Macro's "communications were with Mr. Fisher and his mother," but he had access to

videos of witness interviews by law enforcement with other adults present on the boat and at the restaurant the day of the abuse. Macro explained he does not like to take a deposition in a sexual abuse case as it can be "a practice run in a very controlled setting" for child witnesses and helps the State prepare and have a chance to fix any errors. And, the State was clear if Fisher deposed the victim, "there was going to be no plea negotiations."

According to Fisher, Macro submitted Fisher's guilty plea with a factual basis he "had strong reason to believe was false." And Macro admitted he thought the plea "was a bad idea." Macro noted there was no real defense for the other three charges Fisher was facing, and they were concerned Fisher might face consecutive sentences if convicted. But he still "assumed [Fisher] would turn it down" because "he was always clear he didn't want to go to prison for something he was saying he didn't do." Macro had Fisher do a risk assessment for the plea considering he would have to admit to the act, but Fisher's flight from police and the resulting damage "changed [the] case dramatically" and had Fisher facing additional charges with no real defense—with consequences of two fifteen-year sentences and a one-year term. Macro believed the judge would run all of the sentences consecutively.

Fisher's mother testified she brought Macro the evidence Fisher had sent her—an unfounded child abuse assessment by the department of health and human services and results from a DNA test. Fisher testified that although he had discussed hiring an investigator with Macro, the investigator was not retained before his guilty plea. Fisher testified he could not think of any investigation done by Macro on his behalf—including depositions or obtaining telephone records from

the adults communicating with children in the house. Macro also did not obtain H.J.'s hospital report from a sexual-assault exam done on July 6, when H.J. had reported the assault to her father.

A defense attorney may decide not to depose witnesses for a number of strategic reasons. *See State v. Moncrief*, No. 19-0320, 2020 WL 2988271, at *2 (Iowa Ct. App. June 3, 2020). Even Fisher's postconviction counsel acknowledged "depositions are a strategic choice" and considered Macro's explanation reasonable. Macro's decision to not depose H.J. to keep open Fisher's plea options and not give the State a "practice run" at the child's testimony was within the range of reasonable competency and not a failure of duty.

On his other investigation complaints, even with the information Fisher alleges Macro should have elicited through investigation, this was a classic "he said, she said" case. By Fisher's own admission, he had asked H.J. earlier in the day if she was sexually active and then was alone with her talking about sex in the bedroom with the door closed while the other adults were out. H.J. would have testified to her version of events that night. The younger child who was present in the home also was listed as a witness and would have testified Fisher had H.J. come to the bedroom and shut the door, with H.J. coming back out "a little while later." And Macro had a chance to review the recorded video statements of the witnesses interviewed by law enforcement. Given the record available, and knowing in this type of case the credibility of H.J. and Fisher would be essential, we cannot say Macro's performance fell below that of a reasonably competent attorney. And given the evidence supporting the charge of sexual abuse, the other charges for which there was no defense, and the probability of consecutive

sentences, Fisher failed to prove there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

We affirm the district court's denial of Fisher's claim of ineffective assistance of counsel and his application for postconviction relief.

**AFFIRMED.**